PD-1663-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/21/2015 11:54:05 PM
Accepted 12/22/2015 9:21:39 AM
ABEL ACOSTA
CLERK

No. PD-_____-15

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

BRADLEY LEROY THOMPSON,
Appellant-Petitioner,

v.

THE STATE OF TEXAS,
Appellee-Respondent.

FILED IN
COURT OF CRIMINAL APPEALS

December 22, 2015

ABEL ACOSTA, CLERK

---

## PETITION FOR DISCRETIONARY REVIEW

---

On Petition for Discretionary Review
From the Sixth District Court of Appeals, Texarkana, Texas,
In Cause No. 06-15-00002-CR, Affirming Mr. Thompson's
Conviction In Cause No. 16,737 in the 115th Judicial District Court
Of Upshur County, Texas

---

BARRY CLARK WALLACE
State Bar No. 00785170

**ORAL ARGUMENT
REQUESTED**

Law Office of Barry Clark Wallace, P.C.
Attorney & Counselor at Law
P.O. Box 1408
Gladewater, Texas 75647
Phone No. (903) 845-2192
Facsimile No. (903) 845-2193

ATTORNEY FOR APPELLANT

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**The Honorable Lauren Parish**
115th Judicial District Court of Upshur County, Texas

**The Honorable Josh R. Morriss, III, Chief Justice**
**The Honorable Bailey C. Moseley, Justice**
**The Honorable Ralph K. Burgess, Justice**
Court of Appeals for the Sixth District, Texarkana, Texas

**Bradley Leroy Thompson**
Appellant-Petitioner

**Barry Clark Wallace**
Appellant's Counsel at Trial
Appellant's Counsel for Appeal to Court of Appeals
Appellant's Counsel for Petition for Discretionary Review

**Andy Tefteller**
State Bar No. 24078036
Tefteller Law, PLLC
403 West Tyler Street
Gilmer, Texas 75644
Phone No. (903) 843-5678
Facsimile No. (903) 680-2310
Appellant's Counsel for Petition for Discretionary Review

**The Honorable Billy Byrd**
Criminal District Attorney
Upshur County District Attorney's Office
405 North Titus Street
Gilmer, Texas 75644
Appellee's Counsel at Trial

**The Honorable Natalie A. Miller**
Assistant Criminal District Attorney
Appellee's Counsel at Trial
Appellee's Counsel for Appeal to Court of Appeals

i

# TABLE OF CONTENTS

Identity of Judge, Parties, and Counsel...................................... i

Table of Contents........................................................... ii-iii

Index of Authorities........................................................... iv

Statement Regarding Oral Argument............................................ 1

Statement of the Case......................................................... 2

Statement of Procedural History............................................... 3

Questions Presented for Review............................................... 4

    I.    Did the Court of Appeals err in determining that it was reasonable as a matter of law for Deputy Thompson to continue detaining the driver and Appellant in order to question both of them regarding their travel plans, when the deputy did not at that time have reasonable suspicion of criminal activity to justify continued investigation into other crimes, on the basis that such continued questioning was related to the traffic stop and thus did not unduly prolong Appellant's detention, in apparent conflict with the recent decision of the United States Supreme Court in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015)?

Argument..................................................................... 5

    I.    The Court of Appeals erred in determining that it was reasonable for Deputy Thompson to continue detaining driver and Appellant in order to question both of them regarding their travel plans because at the time Deputy Thompson pulled the driver out of the vehicle he did not have reasonable suspicion that either driver or Appellant were engaged in criminal activity separate from the traffic offense for which they were stopped.

The Law.................................................................. 6

Facts of the Present Case and Suppression Hearing..................... 10

Conclusion.............................................................. 19

Prayer for Relief....................................................... 21

Certificate of Service.................................................. 22

Certificate of Compliance............................................... 23

Appendix................................................................ 24

# INDEX OF AUTHORITIES

CONSTITUTIONS:

Fourth Amendment, U.S. Constitution............................... 8, 9

U.S. SUPREME COURT CASES:

*Florida v. Royer,* 460 U.S. 491 (1983) ............................ 8

*Illinois v. Caballes,* 543 U.S. 405 (2005)......................... 6

*Ohio v. Robinette,* 117 S. Ct. 417 (1996)......................... 8

*Rodriguez v. United States,* 135 S. Ct. 1609 (2015)............... 4-9, 20

*United States v. Sharpe,* 470 U.S. 675, 687 (1985)...................19

STATE CASES:

*Davis v. State,* 947 S.W.2d 240 (Tex. Crim. App. 1997)................. 8

*Fisher v. State,* 2015 Tex. App. LEXIS 12472 (Tex. App. Texarkana Dec. 10, 2015)..................................................16

*Haas v. State,* 172 S.W.3d 42, (Tex. Crim. App.—Waco 2005, pet ref'd).........................................................19

*Kothe v. State,* 152 S.W.3d 54, 57 (Tex. Crim. App. 2004)........ 8, 17

*St. George v. State,* 237 S.W.3d 720, 721 (Tex. Crim. App. 2007) .....
..........................................................7, 9, 19

RULES:

Texas Rule of Appellate Procedure Rule 66.3(c)............................ 5

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument to help aid the Court make a decision in this case.

Petitioner submits that oral argument would be helpful because the case involves questions of exceptional importance to the jurisprudence of Texas. The Court below has decided an important question of state and federal law that has not yet been settled by the Court of Criminal Appeals as it applies to the facts of this case. In addition, the Court below has decided a very important question of state and federal law in a way that conflicts with the decisions of the Court of Criminal Appeals, as well as conflicts with the decisions of the Supreme Court of the United States. Oral argument would thus aid the court resolve the decisions of the United States Supreme Court and this Court's previous decisions.

In addition, Petitioner submits that oral argument would be helpful because of the complexity of the factual and legal issues that are presented by this case.

1

## STATEMENT OF THE CASE

Petitioner was charged by Upshur County Grand Jury with the felony offense of possessing a controlled substance with intent to deliver methamphetamine. 1 CR 7.

Petitioner filed a Motion to Suppress the drug evidence seized from the vehicle he was traveling in that the State used to indict him. 1 CR 7. After a hearing was held, the trial court denied the Motion to Suppress. 1 CR 36. Soon thereafter, Petitioner entered into a plea bargain with the Upshur County District Attorney whereby the trial court assessed his punishment at thirty (30) years confinement, subject to his right to appeal. 1 CR 39 and 41.

## STATEMENT OF PROCEDURAL HISTORY

On November 19, 2015, the Court of Appeals for the Sixth District of Texas handed down its opinion affirming the judgment of the trial court. See Appendix. There was no motion for rehearing filed. Thus, this petition is timely filed within thirty (30) days, per the Rules.

3

# QUESTIONS PRESENTED FOR REVIEW

I.  Did the Court of Appeals err in determining that it was reasonable as a matter of law for Deputy Thompson to continue detaining the driver of the vehicle and Appellant in order to question both of them regarding their travel plans, when the deputy did not at that time have reasonable suspicion of criminal activity to justify continued investigation into other crimes, on the basis that such continued questioning was related to the traffic stop and thus did not unduly prolong Appellant's detention, in apparent conflict with the recent decision of the United States Supreme Court in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015)?

## ARGUMENT

**I. The Court of Appeals erred in determining that it was reasonable for Deputy Thompson to continue detaining the driver and Appellant in order to question both of them regarding their travel plans because at the time Deputy Thompson pulled the driver out of the vehicle he did not have reasonable suspicion that either driver or Appellant were engaged in criminal activity separate from the traffic offense for which they were stopped.**

The Court of Appeals erred in determining that it was reasonable as a matter of law for Deputy Thompson to continue detaining the driver and Appellant in order to question Appellant about his travel plans because at the time Deputy Thompson pulled the driver out of the vehicle he did not have reasonable suspicion that either driver or Appellant were engaged in criminal activity separate from the traffic offense for which he was originally stopped. See Appendix at 8-9. This determination by the Court below directly conflicts with the opinion of the Supreme Court of the United States in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). As such, pursuant to Rule 66.3(c) of the Texas Rules of Appellate Procedure, this Court should grant Appellant's petition for discretionary review.

5

## The Law

The Supreme Court of the United States recently refined the permissible length and scope by which police officers may conduct routine traffic stops throughout the country. *Rodriguez v. United States*, 135 S. Ct. 1609 (2015).

According to the *Rodriguez* decision, an officer may not prolong the detention of the occupants of a vehicle any "measurable" period of time beyond the time that is necessary to accomplish the "mission" or purpose of the routine traffic stop, which purpose is to issue a citation or warning for the traffic offense for which the vehicle was originally stopped. *See Id.* at **10 ("A seizure for a traffic violation justifies a police investigation *of that violation.*")(emphasis added); *see also Id.* ("Like a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission" – to address the traffic violation that warranted the stop")(citing *Illinois v. Caballes*, 543 U.S. 405, at 407 (2005)). Citing prior U.S. Supreme Court decisions, the Court stated that while the Fourth Amendment tolerates "certain unrelated investigations" that do not lengthen the roadside detention (such as questioning the occupants of the vehicle, or

6

running a drug dog sniff around the vehicle) a traffic stop seizure remains lawful only "so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Rodriguez*, at *11. It went on to state that the "[a]uthority for the seizure ends when tasks tied to the traffic infraction are – or *reasonably should have been* – completed." *Id.*, at **11 (emphasis added). "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop . . . . [b]ut . . . he may not do so in a way that prolongs the stop, absent reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.*, at **11-12. The questioning of the passengers of a vehicle have been held to be such "unrelated" inquiries." *See St. George v. State*, 237 S.W.3d 720, 721 (Tex. Crim. App. 2007).

A review of this Court's own opinion in *St. George v. State* shows that the aforementioned rules have similarly been applied by this Court with respect to routine traffic stop investigations. *Id.*, at 721 (Tex. Crim. App. 2007)(continued questioning of defendant passenger of vehicle stopped for having an inoperative license plate light violated Fourth Amendment because the questioning occurred after the driver was issued a warning citation; officer's questioning

7

was not consensual and was not supported by reasonable suspicion that the passenger was engaged in criminal activity); *see also Kothe v. State,* 152 S.W.3d 54 (Tex. Crim. App. 2004)("the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop")(citing *Florida v. Royer,* 460 U.S. 491, 500 (1983)(stating the "scope of the detention must be carefully tailored to its underlying justification")); *see also Davis v. State,* 947 S.W.2d 240, 243 (Tex. Crim. App. 1997)(quoting *Ohio v. Robinette,* 117 S. Ct. 417, 422 (1996)(Ginsberg, J., concurring)("once the reason for the stop has been satisfied, the stop may not be used as a 'fishing expedition for unrelated criminal activity.'")). "Consequently, a detention that is not temporary and reasonably related in scope to the circumstances which justified the interference, is unreasonable and, thus, violative of the Fourth Amendment." *Davis,* at 243.

In *Rodriguez,* the officer waited until after he had issued the driver a warning citation for the traffic violation to run a drug dog sniff around the vehicle. The Supreme Court concluded that if there was no reasonable suspicion of criminal activity *at the point in time* at which the warning citation *should have been issued,* then the continued detention of the occupants past that point in time

8

was, as a matter of law, an illegal detainment in violation of the Fourth Amendment. *Rodriguez*, at 498 (resolving split among the federal circuits on the question of whether police routinely may extend an otherwise-completed traffic-stop, absent reasonable suspicion, in order to conduct a dog sniff); *see also Id.*, at 496 (holding that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures.").

Similarly, in *St. George*, the officer waited until *after* he had issued the driver a warning citation to interrogate the front seat passenger of the vehicle about his identity. After reviewing that traffic stop, this Court found that there was no reasonable suspicion of criminal activity *at the point in time at which the officer issued the warning citation*, and thus, concluded that the continued detention of the occupants in order to question the front seat passenger about his identity was in violation of the Fourth Amendment. *St. George*, at 722 (approving the lower court of appeals' reasoning "that once the warning citation was issued to the driver, the deputies should have stopped questioning Appellant

because they did not have reasonable suspicion to believe that Appellant was involved in criminal activity.")[1]

## Facts of the Present Case and Suppression Hearing

The facts of the present case are really undisputed. Deputy David Thompson, a K-9 officer with the Upshur County Sheriff's department, was on routine patrol around midnight on U.S. Highway 259 near New Diana, Texas with his sergeant, Marty Massoletti, and his canine partner, Chiva. 2 RR 10-11. He observed the vehicle Appellant was riding traveling in the opposite direction on Highway 259 with a defective license plate lamp that failed to properly illuminate the rear license plate; and thereafter Deputy Thompson initiated a routine traffic stop on the vehicle for that violation. 2 RR 11-12. After a short delay, and after traveling through an intersection with well lit areas, the vehicle Appellant

---

[1] While the holding in *St. George* was not dealing with a traffic stop where the officer delayed the issuance of the traffic ticket in order to conduct the unrelated investigation (and thus arguably the holding did not apply to those situations where the officer had yet to actually issue a traffic warning citation) the substance of the opinion is substantially the same as that set forth in the *Rodriguez* decision: that is, at the moment the "mission" or purpose of the underlying traffic stop is complete, the officer must by that point in time have developed reasonable suspicion of criminal activity apart from the underlying traffic law violation itself for that officer to justify any further detention. The rule announced in *Rodriguez* simply further refines what is the relevant "point in time" for which the officer must have obtained reasonable suspicion (that point in time no longer being when the officer actually writes a citation, but rather, when the officer "should have" written the driver a citation).

10

was riding came to a stop in dimly lit area.[2]   2 RR 14, 16-17. Deputy Thompson walked up to the driver's side window and initiated conversation with the driver, Dale Fisher, and informed him the reason he was stopped – the defective tail lamp.  2 RR 17. Deputy Thompson then asked Fisher for his driver's license and insurance.  2 RR 19.  When Fisher could not locate his driver's license, Deputy Thompson requested his name and date of birth, with which Fisher complied.  2 RR 22-23, 40.  Also at this time, Deputy Thompson asked Appellant, who was riding as the passenger in the vehicle, for his identification information.  2 RR 21.   Appellant gave Deputy Thompson his Texas Personal Identification Card.  2 RR 21.   During this exchange, Deputy Thompson asked the driver about where they were traveling that night, and Fisher responded that he and Appellant were traveling from Houston to New Boston.  2 RR 39, 48-49.  Deputy Thompson then told the driver and Appellant to wait while he took their information and ran it through dispatch.  2 RR 23.

---

[2] For unexplained reasons, there was no video of the stop that was preserved for viewing by defense counsel or the Court. Thus, what happened that night was determined solely by Officer Thompson's testimony at the suppression hearing, along with his written officer's report.

11

At this point in time, Deputy Thompson did not notice anything suspicious or out of the ordinary about either Fisher, the driver, or Appellant, the passenger. 2 RR 25, 37. Likewise, Deputy Thompson did not smell any odor of marijuana or other suspicious smells. 2 RR 25, 37. Other than pulling over slowly and pulling into a dimly lit area (according to Deputy Thompson) there was nothing out of the ordinary with respect to the traffic stop at that point in time. 2 RR 25, 42-43.

Deputy Thompson then took Fisher and Appellant's identification information back to his patrol cruiser and submitted their information to dispatch in order to verify that Fisher had a valid driver's license and insurance. 2 RR 25. He also requested a criminal background history for both Fisher and Appellant, and he ran a warrant check. 2 RR 25. The returns from dispatch showed that Fisher had a valid driver's license and insurance, and that both Fisher and Appellant did not have any warrants out for their arrest. 2 RR 25, 40-41. Likewise, the return did not indicate that the vehicle was a stolen vehicle. 2 RR 40. However, the result of the criminal background search showed that both driver and Appellant

had criminal histories for narcotics-related offenses. 2 RR 23, 25, 41.

It is at this point that the traffic stop turned from an investigative stop for a traffic violation, and switched gears to an investigative stop for crime in general. 2 RR 42. The following excerpt from the suppression hearing demonstrates that such a switch did in fact take place:

Q. So at that moment in time you could have written either a traffic citation for the defective equipment as set out by the Transportation Code or issued a warning for that, correct?

A. Yes.

Q. Okay. But you chose not to do that.

A. Yes, sir.

Q. You chose to detain Mr. Fisher and by detaining him you're detaining Mr. Thompson to ask further questions.

A. That is correct.

Q: And your basis for that is because these individuals have criminal histories involving narcotics.

A. Yes, sir.

Q. That's why you want to do the search on the vehicle that evening.

13

A.   And there was also on his criminal history both subjects was organized some other things there that they could be doing something illegal also.

Q.   But you're focusing on the criminal history as to why you're wanting to do the search.

A.   No, sir. I mean, I'm still doing investigative stop.

Q.   Okay. What – but your investigative stop is tied to defective equipment, correct?

A.   And then it went on to – farther more into it for illegal narcotics or other things, stolen guns or anything like that.

Q.   But that only arose once you learned that they had criminal histories.

A.   No, sir, I had already – there was clues that I was looking for that had already happened.  2 RR 41-42.

After receiving the reports from dispatch, Deputy Thompson walked back up to the driver side window and made Fisher step out of the vehicle and walk to the back of the vehicle for questioning.[3] It was at some point in time when Fisher stepped out of the vehicle and was walking to the back of the vehicle that Deputy Thompson observed Fisher started sweating.  2 RR 26-27.  While questioning

---

[3] At the suppression hearing, Deputy Thompson states that he "asked" Mr. Fisher to exit the vehicle and walk to the rear.  2 RR 26.  However, it is clear from the circumstances and Deputy Thompson's other testimony that Fisher was not free to leave and that Fisher had no choice but to comply with the request.  2 RR 41-42.

14

Fisher at the rear of the vehicle regarding his travel history (for the second time), it was at this point in time that Deputy Thompson first smelled marijuana, which gave Deputy Thompson reasonable suspicion of criminal activity. 2 RR 28-29. After requesting consent to search, which was denied, Deputy Thompson informed Fisher that he is a K-9 officer and that he is going to conduct a free air search of the vehicle with Chiva, his drug dog. 2 RR 30. Thereafter, Deputy Thompson for the first time decided to go up to the passenger side of the vehicle and pull Appellant out of the vehicle for questioning about his travel plans. 2 RR 31-32. After getting a story that is inconsistent with the story given by Fisher (with respect to the details of the travel from Houston) Deputy Thompson then proceeded to perform a free air search of the vehicle with his partner, Chiva. 2 RR 32-33. This search resulted in positive alerts that drugs were in the vehicle, and thus gave Deputy Thompson probable cause to search the interior of the vehicle, where multiple illegal drugs and other evidence was found. 2 RR 33-34. It was this evidence that was later used to convict Fisher and Appellant for drug trafficking crimes. 1 CR 7, 39, 45.

## Application of Law to the Facts

While no findings of fact or conclusions of law were made by the trial court, it is clear from the record at the suppression hearing that Deputy Thompson proceeded to pulled the driver, Fisher, out of the vehicle in order to question Fisher on matters unrelated to the traffic stop, specifically (as stated in his own words) to look for "illegal narcotics or other things, stolen guns or anything like that." 2 RR 42. Even giving the trial court every deference with respect to its determination of the facts, there is no other way to interpret Deputy Thompson's testimony. Deputy Thompson decided to pull Fisher out of the vehicle and detain both Fisher and Appellant to "investigate" based on the criminal history reports and the "clues" that he had developed by that point in time. 2 RR 43-45.

But those "clues" Deputy Thompson had observed did not amount to reasonable suspicion until Deputy Thompson smelled marijuana on Fisher. By that point in time, it was too late. *See Fisher v. State*, 2015 Tex. App. LEXIS 12472 at *14 (Tex. App. Texarkana Dec. 10, 2015)("All information leading to reasonable suspicion was obtained after Thompson returned to the vehicle and spoke to Fisher the second time. Therefore, in resolving this case,

16

we must decide whether Thompson's continued questioning of Fisher and Bradley after he had completed the warrants and registration check was related to the original purpose for the traffic stop").

In the opinion of the Court below, however, the court glosses over the facts of this case and the relevant law and simply summarily states "that "[e]ven though Thompson had talked to Fisher twice before he questioned Appellant, Thompson was entitled to question both of them regarding their travel plans." Appendix at 4. Then the Court cited a footnote of this Court's opinion in *Kothe v. State* as authority for that absolute right. The Court then goes on to state that "[t]herefore, the original traffic stop investigation ended when Thompson questioned Appellant about his travel, because even though Thompson had already completed the warrant and identification checks, his further questioning of Fisher and Appellant regarding their travel history was related to the traffic stop and did not unduly prolong Fisher's detention." Appendix at 4.

However, the Court in *Kothe* did not specifically hold nor allude to such an entitlement of the investigating officer during the course of a routine traffic stop investigation. While the footnote

17

cited (footnote 36) does contain a quotation from a federal circuit court that includes the word "travel plans," the real issue the Court in *Kothe* was grappling was whether or not an investigating officer may continue to detain the occupants of a stopped vehicle in order to wait for the results of a warrant check, *not* whether an investigating officer could continue to detain the occupants in order to go question the passenger about his travel plans. *Id.* The "travel plans" language in the footnote above was not ever elaborated on by the *Kothe* Court, or emphasized in the opinion itself, as a basis for its holding. *Id.* Instead, what the Court in *Kothe* actually held was the following:

> On a routine traffic stop, a police officer may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information. It is only after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved. *Id.* at 63.

The Court was speaking about the right of the officer to run the identification information of the driver and the car itself, to check for warrants, to see if the car was listed as stolen, and to verify the license and registration was up to date and valid – it was *not* speaking about the right of the officers to continue to detain the

18

vehicle to interrogate the passengers about their travel history *against their will.* *Id.* Thus, the holding in *Kothe* does not provide support for the conclusion of the Court below that Deputy Thompson was free to continue detaining driver and Appellant until he had a chance to question Appellant about his travel history.

To the contrary, Officer Thompson's chance at conversing with Appellant as a passenger was during the traffic stop, not after it had already concluded. *See Haas v. State*, 172 S.W.3d 42, 50 (Tex. App.—Waco 2005, pet ref'd)(citing *United States v. Sharpe*, 470 U.S. 675, 687 (1985)(stating that an officer may question the detained individual concerning matters unrelated to the purpose of the initial traffic stop if the officer is waiting for the result of a computer check); *see also St. George v. State*, 237 S.W.3d 720 (Tex. Crim. App. 2007)(stating that while officer's may question a passenger and request identification without separate reasonable suspicion of the passenger, they may not compel the passenger to answer or imply that compliance with the request is required).

## **CONCLUSION**

Thus, since the decision by the Court below turns on the belief that Deputy Thompson had the absolute right to question Appellant about his travel plans, it was error.

In addition, the Court erred because taking the facts and circumstances in the light most favorable to the Trial Court's judgment, there is insufficient evidence as a matter of law to support the Trial Court's holding that the continued detention of the occupants was supported by reasonable suspicion of criminal activity. Thus, this Court should reverse the opinion of the Court below, and that of the Trial Court, and remand for a judgment of acquittal.

Alternatively, this Court should remand this case to the Court of Appeals for reconsideration in light of *Rodriguez v. United States* and this Court's prior opinions which are inconsistent with its holdings.

## PRAYER FOR RELIEF

For all of the foregoing reasons, Appellant respectfully requests that the Court grant discretionary review, conduct oral argument, and reverse and remand the judgment of the Court of Appeals below, and grant any other relief, whether at law or in equity, to which Petitioner has shown himself to be justly entitled.

Respectfully submitted,


/s/ Barry Wallace

State Bar No. 00785170
Law Office of Barry Clark Wallace
Attorney & Counselor at Law
P.O. Box 1408
Gladewater, Texas 75647
Phone No. (903) 845-2192
Facsimile No. (903) 845-2193
Email: bcwallace@suddenlinkmail.com

/s/ Andy Tefteller

State Bar No. 24078036
Tefteller Law, PLLC
403 West Tyler St.
Gilmer, Texas 75644
Phone No. (903) 843-5678
Facsimile No. (903) 680-2310
Email: andyt@teftellerlaw.com

ATTORNEYS FOR APPELLANT

21

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered by United States Mail to Hon. Billy Byrd, Criminal District Attorney, Upshur County, Texas at 405 North Titus St. Gilmer, Texas 75644 and to Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711-3046 on this 21st day of December, 2015.

/s/ Barry Wallace

Barry Clark Wallace
Counsel for Appellant-Petitioner

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, and relying upon the word count of Microsoft Office Word, the computer program used to prepare this document, I certify that this document contains 3,338 words.

/s/ Barry Wallace

Barry Clark Wallace
Counsel for Appellant-Petitioner

**Reporter**

2015 Tex. App. LEXIS 11859

BRADLEY LEROY THOMPSON, Appellant v. THE STATE OF TEXAS, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On Appeal from the 115th District Court, Upshur County, Texas. Trial Court No. 16,737.

## Case Summary

### Overview

HOLDINGS: [1]-The search of the vehicle was not invalid and the trial court did not err in denying defendant's motion to suppress; the original traffic stop investigation ended when the officer questioned defendant about his travel, because even though the officer had already completed the warrant and identification checks, his further questioning of the vehicle driver and defendant regarding their travel history was related to the traffic stop and did not unduly prolong the detention.

### Outcome

Judgment affirmed.

**Judges:** Before Morriss, C.J., Moseley and Burgess, JJ. Memorandum Opinion by Chief Justice Morriss.

**Opinion by:** Josh R. Morriss, III

## Opinion

MEMORANDUM OPINION

Bradley Leroy Thompson (Appellant) was a passenger in the car of Dale Dewayne Fisher when the car was stopped for a defective license plate bulb by David Thompson (Thompson or Deputy Thompson), an Upshur County Deputy Sheriff. During a subsequent search of the vehicle, Deputy Thompson discovered a gun, suspected counterfeit currency, and suspected methamphetamine. Appellant was arrested and, in a two-paragraph indictment, charged with possession of more than four grams but less than 200 grams of a controlled substance and possession with intent to deliver. At trial, Appellant

moved to suppress the evidence found in the traffic stop, arguing that his detention was improperly prolonged beyond its purpose in violation of his constitutional rights, but the trial court denied his motion. As part of a plea agreement, Appellant subsequently pled guilty to possession with intent to deliver in exchange for a thirty-year sentence. The trial court accepted the plea agreement and sentenced [*2] Appellant to thirty years' imprisonment.

On appeal, Appellant argues that the trial court erred by denying his motion to suppress. We affirm the trial court's judgment because the trial court did not abuse its discretion in denying the motion to suppress.

We review the trial court's decision to deny Appellant's motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd)*; *Rogers v. State, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd)*. Since the trial court tries the facts and judges witness credibility at a suppression hearing, we defer almost totally to that court's determination of facts if supported by the record. *State v. Ross, 32 S.W.3d 853, 856-57 (Tex. Crim. App. 2000)*; *Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)*; *Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)*. We also defer to a trial court's ruling on questions of the application of law to fact, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)*.

We review de novo the trial court's applying of the law and determining questions not turning on credibility. *Graves, 307 S.W.3d at 489*; *Carmouche, 10 S.W.3d at 332*; *Guzman, 955 S.W.2d at 89*. Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of Appellant's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *Carmouche, 10 S.W.3d at 328*; *State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)*. In determining whether [*3] a trial court's decision is supported by the record, we generally consider only evidence from the suppression hearing rather than evidence introduced later at trial. *Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996)*.

Police officers may stop and detain a person if they reasonably suspect that a traffic violation is in progress or has been committed. *Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992)*. A traffic stop is a detention and must be reasonable under the United States and Texas Constitutions. *See Davis v. State, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997)*; *Caraway v. State, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.)*. To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)*; *Davis, 947 S.W.2d at 245*. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette, 519 U.S. 33, 39, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996)*; *Spight v. State, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2002, no pet.)*. An investigative stop that is reasonable at its inception may violate the *Fourth Amendment* because of excessive intensity or scope. *Davis, 947 S.W.2d at 243* (citing *Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968))*.

In the course of a routine traffic stop, the detaining officer may request a driver's license or identification, car registration, and insurance information; may use that information to conduct a computer check for outstanding arrest warrants; may question the vehicle's occupants regarding their

travel plans; and may issue a citation. *Kothe v. State, 152 S.W.3d 54, 63 n.36 (Tex. Crim. App. 2004)*; *Caraway, 255 S.W.3d at 307*; *Davis, 947 S.W.2d at 245 n.6*. If, during that investigation, an officer develops reasonable suspicion that another violation [*4] has occurred, the scope of the initial investigation can expand to include the new offense. *Goudeau v. State, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.)*. Reasonable suspicion must be based on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010)*.

When the reason for the stop has been satisfied, the stop must end and may not be prolonged to conduct a "fishing expedition for unrelated criminal activity." *Davis, 947 S.W.2d at 243* (quoting *Robinette, 519 U.S. at 41* (Ginsburg, J., concurring)). Once the officer concludes the investigation of the conduct that triggered the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe that another offense has been or is being committed. *Id. at 245*. Nevertheless, "[t]here is . . . no constitutional stopwatch on traffic stops. Instead, the relevant question in assessing whether a detention extends beyond a reasonable duration is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *Haas v. State, 172 S.W.3d 42, 51-52 (Tex. App.—Waco 2005, pet. ref'd)* (quoting *United States v. Sharpe, 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985))*; *see also Sharpe, 470 U.S. at 685-86* (declining to "establish a per se rule that a 20-minute detention is too long" under *Terry* [*5] ); *Kothe 152 S.W.3d at 64-65* ("The Supreme Court has expressly rejected placing a rigid time limitation on *Terry* investigative detentions.").

Deputy Thompson testified that, on December 30, 2013, while patrolling U.S. Highway 259 near New Diana, Texas, he observed a 2002 GMC Yukon with a defective license plate light.[1] Thompson activated his overhead lights and pulled the car over. The driver was slow to pull over, passing by several well-lit parking lots and finally stopping in a dark location. Thompson approached the driver's side window and spoke with the occupants. He asked for their identification. The passenger, Appellant, produced a State-issued identification card, but Fisher, the driver, could not locate his driver's license. Fisher gave Deputy Thompson his name and date of birth instead. Fisher told the deputy that he and Appellant were driving from Houston to New Boston.

Deputy Thompson testified that Fisher was initially calm and that nothing seemed suspicious or out of the ordinary during this initial interaction. Thompson obtained the identifying information from both men, forwarded it to dispatch, determined that there were no outstanding [*6] warrants, and determined that the car was not stolen. Although neither occupant had outstanding arrest warrants, both had a "lengthy history of narcotics and other offenses."

Deputy Thompson called for another officer, returned to the Fisher vehicle, and asked Fisher to exit the vehicle and step to the back of the car, where he asked Fisher a few follow-up questions regarding his travel history and destination. As Fisher complied with Thompson's request, the deputy noticed that Fisher was "getting nervous" and increasingly sweating to the point he was "drenching with water" and "steadily wiping sweat from his head." The officer remembered that the temperature that night was in the "mid or upper twenties, low thirties," and it was windy and cold.

---

[1] Fisher does not challenge the propriety of the initial traffic stop.

Deputy Thompson then questioned Fisher about where he was driving from, when he left, and where he was going. In response, Fisher stated that he was driving from Houston to New Boston and that he had left Houston between 2:00 and 3:00 p.m. that day. The deputy testified that Highway 259 is a major traffic corridor for illegal narcotics. He also testified that, when he spoke with Fisher at the rear of his vehicle, he smelled burned marihuana on [*7] Fisher's clothing. Fisher denied having anything illegal in his car and denied his consent to search the vehicle. Thompson informed him that he was going to perform a free-air search of the car with the K-9 he had in his patrol vehicle. However, before performing the K-9 search, with Fisher at the vehicle's rear, Thompson had Appellant get out and walk to the front of the car, where he separately asked Appellant regarding his travel history and destination.

Appellant told the deputy that the pair had left Houston between 12:00 and 1:00 p.m. that day. Appellant said he did not know if there was anything illegal in the car, but said that they had stopped at Nacogdoches and Longview on their way.

Deputy Thompson retrieved his drug-sniffing dog, Chiva, from his patrol car. He had the dog perform an open-air search of the car. He testified that Chiva gave a positive alert on the driver's window, and after being let into the car, gave another positive alert on the center console. In the center console, Deputy Thompson found a pistol, suspected counterfeit currency, and a substance later determined to be methamphetamine. Fisher and Appellant were arrested at that point.

Appellant contends that [*8] the trial court should have suppressed the evidence found in the car because, at the time Fisher was ordered out of the car, their continued detention by the police was without sufficient cause, rendering the later search of his vehicle invalid.[2] We disagree.

Here, the original purpose for the traffic stop was to investigate the defective license plate bulb. During the course of that stop, Thompson was permitted to obtain the occupants' driver's licenses or identification, the car registration, and proof of insurance and then use that information to check for outstanding arrest warrants. See *Caraway, 255 S.W.3d at 307*; *Davis, 947 S.W.2d at 245 n.6*. Even though Thompson had talked to Fisher twice before he questioned Appellant, Thompson was entitled to question both of them regarding their travel plans. See *Kothe, 152 S.W.3d at 63 n.36*. Though Thompson questioned Appellant after checking Fisher [*9] and him for warrants, there is no requirement that an officer perform a traffic stop investigation in any particular order. See *id. at 63-64, 65*. Therefore, the original traffic stop investigation ended when Thompson questioned Appellant about his travel, because even though Thompson had already completed the warrant and identification checks, his further questioning of Fisher and Appellant regarding their travel history was related to the traffic stop and did not unduly prolong Fisher's detention.[3] For the foregoing reasons, the trial court was within its discretion to deny Appellant's motion to suppress.

We affirm the trial court's judgment.

---

[2] Appellant does not dispute that, by the time Thompson had finished questioning Fisher and him about their travel plans, Thompson had sufficient articulable facts to establish reasonable suspicion that a drug offense was occurring or had occurred, which justified Appellant's continued detention and the subsequent search of the car. Therefore, we need not address these issues.

[3] In *Kothe*, the Texas Court of Criminal Appeals held that, although the sequence of events is "relevant to the legal determination of 'reasonableness,' [it] is not in itself determinative'" and that *"Fourth Amendment* 'reasonableness' does not require a 'single, formulaic approach' to a traffic stop investigation, nor does it require rigid adherence to 'the least intrusive means' of investigation defined by Monday-morning reviewing courts." *Kothe, 152 S.W.3d at 66* (citing *Brigham v. State, 382 F.3d 500, 511 (5th Cir. 2004)*). Yet, the Court of Criminal Appeals also noted,

Josh R. Morriss, III

Chief Justice

Date Submitted: September 8, 2015

Date Decided: November 19, 2015

Do Not Publish

---

In the present case, there is no evidence—or even suggestion—that Deputy Forslund failed to diligently pursue his investigation. [*10] Nor is there any evidence that Officer Forslund ran the license check as a pretext to investigate an unrelated crime for which he had no reasonable suspicion. There is no suggestion that he engaged in any "fishing expedition." Quite the contrary, the trial judge in his factual findings was careful not to give that impression.

*Id.* Even though an officer is not required to perform traffic stop procedures in a particular order, in *Kothe* the court suggested that an officer's choice of sequence to perform the permissible functions could unreasonably prolong a traffic stop sufficient to constitute a Fourth Amendment violation. But just as in *Kothe*, there is no indication here that Thompson's choice of sequence unreasonably prolonged Fisher's and Appellant's traffic stop.